UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAJUANDA RUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV2104 HEA |
| | ) | |
| ASCENSION HEALTH LONG AND | ) | |
| SHORT TERM DISABILITY PLAN, | ) | |
| | ) | |
| Defendant. | | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court are the parties' cross-motions for summary judgment, [1] [Doc. No.'s 28 and 31].

Plaintiff brings this cause of action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq., alleging that Defendant, the sponsor of the self-funded Short Term Disability (STD) plan which includes St. John Providence Health System, (St. John Health), wrongfully terminated her short term disability benefits to which she was entitled under the plan. Plaintiff

---

[1] Defendant filed a Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. No. 36], based on Plaintiff's failure to file the motion within the time prescribed by the Court. Essentially, Plaintiff's motion is the contra-position to Defendant's Motion for Summary Judgment. Because the Court's consideration of this matter is a review of the administrative record in this action, Defendant's Motion, while accurately observing Plaintiff's untimely filing, will be denied.

also alleges that defendants' wrongful termination of her short term disability

benefits precluded her from receiving long term disability benefits, to which she

claims she was also entitled.  Plaintiff seeks recovery of short term disability

benefits for the remainder of the period during which she claims she was eligible

for such benefits, recovery of long term disability benefits from the date upon

which she claims she would have otherwise been eligible to receive such benefits,

and recovery of her attorney's fees and costs incurred in this action, pursuant to 29

U.S.C. § 1132(g)(1)

     Plaintiff and Defendant now move for summary judgment, arguing that

there are no genuine issues of material fact and that they are each entitled to

judgment as a matter of law.

     Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if the

information before the court shows that there are no material issues of fact in

dispute and that the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The burden of proof is

on the moving party to set forth the basis of its motion, *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986), and the Court must view all facts and inferences in the

light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v.

Zenith Radio*, 475 U.S. 574, 587 (1986).  Once the moving party shows there are

no material issues of fact in dispute, the burden shifts to the adverse party to set

forth facts showing there is a genuine issue for trial.  *Id.*  The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. *Celotex*, 477 U.S. at 324.  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir.1983).  Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law.  *Husinga v. Federal–Mogul Ignition Co.*, 519 F.Supp.2d 929, 942 (S.D.Iowa 2007).

<u>Facts and Background</u>

Defendant sponsors the self-funded STD Plan for the benefits of eligible associates of its affiliated hospitals and health systems, including St. John Providence Health System, (St. John Health).  The STD Plan is an employee welfare benefit plan governed by ERISA. In accordance with the terms of the STD Plan, Defendant has delegated the discretionary authority to make benefit determinations to Sedgwick, the Claims Administrator.

In determining the instant motions for summary judgment, the Court has reviewed the evidence and information submitted in support of the parties' respective positions and finds there to be no genuine issues of material fact in

dispute.  A recitation of the relevant undisputed facts follows:

The STD Plan defines "Disability/Disabled" in relevant part as follows:

*Disability/Disabled* You are considered to be Disabled or to have a Disability, if due to an Injury or Sickness that is supported by objective medical evidence**,** you require and are receiving the regular care and attendance of a Licensed Physician and you are following the course of treatment recommended by the Licensed Physician. In addition, one of the following is true:

You are unable to perform each of the Material Duties of your Regular Occupation …

The STD Plan also includes the following definitions:

*Material Duties* means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience that are generally required by employers from those engaged in a particular occupation and that cannot be reasonably modified or omitted.

*Regular Occupation* means the activities that the Participant regularly performed when the Participant's Disability began. In addition to the specific position or job the Participant holds with the Participant's Employer, Regular Occupation also includes other positions and jobs for which the Participant has training and/or education to perform in the Participant's profession at the Participant's employer or any other employer.

Defendant also sponsors the self-funded, Ascension Health Long-Term Disability Plan ("LTD Plan") for the benefit of eligible employees of St. John Health.  The LTD Plan is an ERISA-governed welfare plan. Defendant  has delegated the discretionary authority to make LTD claims determinations to Sedgwick.  The LTD Plan runs consecutively with the STD Plan.  To be eligible to

receive benefits under the LTD Plan, a participant must first satisfy a 181-Day Elimination Period, during which time the Participant must be Disabled (and therefore exhaust benefits available under the STD Plan). During the first 24 months, the LTD Plan defines "Disability/Disabled" the same as the STD Plan. The LTD Plan states that in order to be Disabled, a Participant must be unable to perform "each of the Materials Duties of the Participant's Regular Occupation." The LTD Plan also defines the terms "Materials Duties" and "Regular Occupation" the same as the STD Plan.

Plaintiff was employed as a Laboratory Assistant/Phlebotomist at St. John Health.  She performed computer order and data entry functions, processing laboratory specimens and provided customer service in the St. John Health laboratory. Plaintiff's job duties require physical ability for extensive walking, standing, bending, and lifting. Her job responsibilities included collecting blood specimens from patients, preparing and transporting specimens to the laboratory and ensuring specimen integrity.  Plaintiff was also required to maintain inventory, place orders, receive supplies and rotate stock in an orderly and timely manner.

Plaintiff's initial claim for disability, based on Dr. Arthur Bouier's diagnosis of cervical radiculitis stated that her disability began on February 4, 2010. Plaintiff's last day of work at St. John Health was February 3, 2010.

Plaintiff was seen at St John Health by Dr. Gina Gora on January 12, 2010.

At that time, Plaintiff stated that she slipped, fell and hit the back of her head.  She felt dizzy afterwards and had complaints of pain in her neck, shoulders, back, and legs.  Dr. Gora found musculoskeletal tenderness and tightness of the trapezius muscles bilaterally, but no bony tenderness of the neck, T-spine or L-spine to palpation.  Dr. Gora also noted tenderness of the paraspinous muscles.  Dr. Gora noted that Plaintiff was alert and in no acute distress.  Plaintiff was referred to her primary physician, Dr. Manhal Tobia.

At Dr. Tobia's request, Plaintiff was examined by Dr. Adolfo Medicor on January 14, 2010.  Dr. Medicor noted a slight narrowing of the C5/C6 disc space but no compression fracture or subluxation.  He also noted mild to moderate degenerative arthritis of the entire lumbar spine.

Beginning February 4, 2010, Plaintiff began to visit Dr. Arthur Bouier with Ascending Home Physicians, complaining of pain in her neck and back.  Dr. Bouier completed Plaintiff's Leave of Absence paperwork on February 11, 2010, noting that Plaintiff would need to miss work for approximately 1-2 days per month for follow up visits.  Dr. Bouier stated that Plaintiff was not unable to perform work of any kind or unable to perform any one or more of the essential functions of her job at that time.

Dr. Bouier completed an Attending Physician Statement on February 11, 2010.  Dr. Bouier stated that Plaintiff was unable to perform her regular job duties,

but was expected to return to work with full abilities on February 25, 2010.  Dr.

Bouier stated that Plaintiff's return to work plan will be determined after her EMG

and X-ray results.  He also stated that Plaintiff's prognosis was "guarded."

At Dr. Bouier's request, Dr. David Jackson with Rehabilitation Physicians,

Inc. examined Plaintiff on February 19, 2010, and documented the results of his

examination as follows:

> The exam does show some slight flattening of the hypothenar
> eminence, but no real weakness. The nerve conduction studies
> revealed slightly low amplitude of the left ulnar motor nerve at 2.3
> millivolts. The right ulnar motor nerve was normal at 6.1 millivolts.
> The distal latencies were normal. The left ulnar sensory and left
> median sensory distal latencies were borderline prolonged at 3.7, but
> the amplitudes were well within normal limits. The right ulnar
> sensory amplitude and distal latency were normal. The needle
> examination sampling the anterior myotomes in the left upper
> extremity was completely normal.

Dr. Jackson performed a Neuromuscular Electro diagnosis of Plaintiff on

February 19, 2010.  The Electro diagnosis revealed an asymmetrically low ulnar

motor amplitude on the left.  He also noted there was no evidence for cervical

radiculophathy based on the normal anterior myotomes in the left upper extremity.

Dr. Bouier provided Sedgwick with an updated report on or around

February 23, 2010, diagnosing Plaintiff with cervical radiculophathy and pushing

Plaintiff's return to work date back to March 18, 2010. This report did not note

any restrictions of movement or limitations on daily activities.

On March 5, 2010, Sedgwick initially approved Plaintiff's STD claim and provided STD benefits to Plaintiff from February 24, 2010 onward.  Sedgwick then began collecting updated medical records from Plaintiff's health care providers.

Dr. Bouier provided Sedgwick with Disability Updates in March 2010, extending Plaintiff's return to work from March 18th to March 30th and March 30th to April 13th, thus determining she was disabled at that time, but provided no information as to any restrictions in movement or daily activities Plaintiff was unable to perform.

On March 22, 2010 and April 5, 2010, Sedgwick requested additional information from treating specialist Dr. Teck Mun Soo, Clinical Director of the Complex Spine Program and Chief of Neurosurgery at the Van Elslander Neurosciences Institute, and Dr. Bouier.

On April 5, 2010, Dr. Bouier provided Sedgwick with another Disability Update, extending Plaintiff's return to work date from April 13, 2010 to May 4, 2010. Dr. Bouier generally stated that Plaintiff experienced limitations in the "use of [her] hands."  Dr. Bouier states that Plaintiff had carpal tunnel syndrome and post concussion syndrome.  No additional restrictions or limitations were noted.

On April 6, 2010, Dr. Bouier referred Plaintiff to ITD Physical Therapy for

treatment.

Dr. L. Donalunet of Occupational Health Partners submitted additional medical records to Sedgwick on May 3, 2010, including an Examining Physician's Statement of Physical Capabilities. This report stated that Plaintiff was still unable to work due to a neck, back, lower extremity injury.

Dr. Soo likewise submitted medical records to Sedgwick on May 4, 2010 of an examination and cervical spine x-ray, performed on March 11, 2010. In connection with his examination, Dr. Soo noted some degenerative changes to the cervical spine, as well as some stiffness of the neck muscles and pain in the lumbar area.  Dr. Teck Mun Soo observed that Plaintiff's range of motion in her cervical spine was normal, she experienced no arm or hand weakness or difficulty with hand dexterity, and she stated that her symptoms were tolerable. For these reasons, Dr. Soo recommended that Plaintiff reserve surgery as a treatment of last resort and return to see him if she needed operative care. Dr. Soo described Plaintiff's activities of daily living in stating that she could stand for 10 minutes, sit for one hour and walk for 10 minutes.  Plaintiff also reported she experiences problems when falling asleep and experiences waking up at night.  Dr. Soo also viewed X-rays of the lumbar spine which revealed anterolisthesis and retrolisthesis of L2 on L3 and degenerative disc disease at L2-3, L3-4 and L5-S1. A final diagnosis was given of: Congenital canal stenosis, Mild cord flattening,

Bilateral froaminal stenosis at C5-6, Degenerative disc disease of he cervical

spine, Anterolisthesis and retrolisthesis of L2 on L3, Degenerative disc disease at

L2-3, L3-4 and L5-S1.  Dr. Soo provided no opinion as to whether Plaintiff could

return to work, or as to whether her symptoms limited her in any of her job

functions.

On May 25, 2010, Sedgwick received records from IDT Physical

Therapy related to Plaintiff's physical therapy treatments.  These records

contained an Initial Physical Therapy Evaluation for Plaintiff,  completed by ITD

Physical Therapist Jeanette Saari ("Ms. Saari") on April 22, 2010. This evaluation

noted that Plaintiff presents difficulties with sitting, walking, standing, getting up

from a chair, reaching out and overhead, reaching behind her back, sleeping,

squatting, lying down, looking up, going up and down stairs, and bending.   It was

reported that Plaintiff had normal static and dynamic balance..   The goals of

physical therapy were to improve muscle strength, decrease pain in the neck and

left arm and improve range of motion.

That same day, Sedgwick received additional records from Dr. L. Russo at

Occupational Health Partners.  These records demonstrated that Occupational

Health Partners had performed another return to work evaluation of Plaintiff on

May 19, 2010 and released Plaintiff to return to regular work beginning on May

20, 2010.  Specifically, the clinical progress notes state, "RTW eval headaches

better . . .dizziness better . . .only taking Vicodin at night . . .In PT . . . Improved."

Shortly thereafter, on June 8, 2010, Sedgwick requested updated records from Dr. Bouier and from ITD Physical Therapy for the period of May 2010 to the date of the request.  After receiving no response to its request for updated medical records and tests, Sedgwick informed Plaintiff on June 18, 2010 that it would be unable to make a determination of her eligibility for continued benefits until it received additional documentation to substantiate her claim of ongoing disability.

On July 1, 2010, Sedgwick finally received Plaintiff's physical therapy records, but no records were received from Dr. Bouier despite its repeated requests to both Dr. Bouier's office and to Plaintiff herself. On July 1, 2010, Plaintiff was notified that her claim was being denied due to the fact that Sedgwick had not been supplied with sufficient medical to substantiate the claim that Plaintiff remained disabled.

On July 20, 2010, Dr. Bouier's office finally sent additional medical records for office visits on May 6, 2010 and May 20, 2010, however not much medical information was available. Both notes are difficult to read and basically just state that Plaintiff was following up for a refill of her Vicodin.  The May 6, 2010 report states that Plaintiff still complains of vertigo and neck pain.  A diagnosis was made of cervical myosotis, lumbar myosotis and cephalgia.  In the May 20, 2010 report, Dr. Bouier indicates that Plaintiff's condition remains unchanged.

On July 13, 2010, Sedgwick approved benefits through May 20, 2010 but referred the case to its Nurse Case Manager to determine whether Plaintiff remained eligible for benefits beyond May 20, 2010. Once again,  Nurse Case Manager Vargo approved benefits through June 26, 2010 so that Sedgwick could make a final attempt to gather additional medical information from Plaintiff and from Dr. Bouier. (AR 905-906).

On August 5, 2010, Sedgwick spoke with Plaintiff to gather additional information to assist with the Nurse Case Manager's determination of benefits beyond June 26, 2010. Plaintiff stated that she performed stretching/strengthening activities at home on days when she did not go to physical therapy.  She said that she was able to perform activities of self care and to drive herself to and from therapy.  She said she wore a back brace at times and said that she was only treating with Dr. Bouier.  She reported that her next visit was not until August 19th.

On August 12, 2010, Sedgwick once again requested medical treatment records from Dr. Bouier's office for the period of June 18, 2010 through the present.

On August 16, 2010, Dr. Bouier provided a few additional medical notes and records, including notes from office visits on June 17, 2010 and July 22, 2010 and an Attending Physician Statement dated August 12, 2010.

The June 17, 2010 office visit note merely notes that Plaintiff is continuing physical therapy and Vicodin.  In addition, in an attending physician statement dated July 17, 2010, Dr. Bouier extended Plaintiff's "return to work date" to August 12, 2010 but stated that Plaintiff's only restrictions were that she could not perform heavy lifting over ten (10) pounds or overhead reaching. Plaintiff was not restricted in repetitive movements, bending, walking, driving or typing.  The July 22nd note states that the patient is following up for a refill of Vicodin. The note states that examination taken on that date confirms the continued diagnosis of radiculitis and myositis.

The August 12, 2010 Attending Physician Statement from Dr. Bouier notes that Plaintiff was released to return to work as of August 12, 2012 without restriction. However, as is noted above, Dr. Bouier last saw Plaintiff on July 22, 2010.

Sedgwick submitted Plaintiff's entire file to its Nurse Case Manager, Ms. Vargo, for review.  After a thorough review, Ms. Vargo recommended that benefits be approved through the date of the last office visit – July 22, 2010 – and discontinued beyond that date.

Sedgwick notified Plaintiff on August 25, 2010 that she did not qualify for additional STD benefits beyond July 22, 2010, because as of that date there was no objective evidence that Plaintiff was **"**unable to perform each of the Material

Duties of [her] Regular Occupation." Plaintiff's sole treating physician had

opined that as of the date of the letter, Plaintiff was no longer Disabled.

Sedgwick also advised Plaintiff of her right to appeal the determination within 180

days, and provided an appeal packet of information. Prior to this denial, 167 days

had passed since Plaintiff left work on Disability. Consequently, Plaintiff was not

eligible to receive LTD benefits, as she did not satisfy the LTD Plan's Elimination

Period. Sedgwick further determined that, based upon the same medical records

reviewed in connection with Plaintiff's STD claim, Plaintiff did not meet the LTD

Plan's definition of Disabled – which required objective medical evidence

establishing that she was unable to perform each of the material duties of her job.

 Plaintiff submitted an appeal of the denial of additional STD benefits, dated

September 29, 2010. Sedgwick received the appeal on or around October 11,

2010.

　　　In support of her appeal, Plaintiff listed Dr. Bouier as her only treating

physician. Plaintiff also generally stated that she was still unable to return to

work. She attached a note from Dr. Bouier, dated September 1, 2010, which stated

"Patient is totally disabled to work for an indefinite period. 9/4/2010-10/31/2010

estimate."

　　　On October 28, 2010, Sedgwick received notice that Plaintiff was

represented by her current counsel. Plaintiff's counsel requested and Sedgwick

granted Plaintiff an additional 30 days to submit any documentation that Plaintiff

wished to have considered in connection with the appeal.

On November 12, 2010, Plaintiff's attorney requested a copy of the claims

file from Sedgwick.. The claims file was sent to counsel on around November 24,

2010.

On November 15, 2010, Sedgwick received a progress note from Dr. Dewit

Teklehaimanot . This record evidenced that Dr. Teklehaimanot had conducted a

physical examination of Plaintiff on October 12, 2010, and had observed the

following:

> The patient is walking independently without any assisted device. She
> is not using a cane or walker. Her balance is good. Her mobility is
> good. She is able to get up from the chair and stand without any
> difficulties and also able to get on to the table without any
> difficulties.

> Dr. Teklehaimanot further noted:

> She does have significant tenderness in palpating the soft tissues over
> the cervical and paraphinal muscles and also the suboccipital muscles
> on the left side.  There is slight radiation of pain into the temples on
> the left side compared to the right.  The patient also has significant
> limitation of range of motion of the lumbar spine.  Her flexions were
> limited to 60 degrees, extension limited to 10 degrees, side bending to
> the right and left limited to 10 degrees, rotation to the right and left
> limited to 10 degrees.  Her fingertip to the floor test shows that the
> patient has limitations of range of motion the distance being 40 cm.
> There is spasm in the lumbar paraspinal muscles during these
> examinations.

Dr. Teklehaimanot did not offer any opinion as to whether Plaintiff could return to

work, or perform her job duties.

On November 29, 2010, Sedgwick granted Plaintiff's counsel a further 30-day extension of time up to and including December 29, 2010, to submit any additional documentation relevant to determining Plaintiff's appeal.

On December 1, 2010, counsel submitted the same medical records that had already been examined in connection with the initial claims determination, along with the report from Dr. Teklehaimanot referenced above .

On December 27, 2010, Sedgwick referred Plaintiff's appeal to Network Medical Review Co., which remitted Plaintiff's medical records to independent specialist advisor Dr. Jamie Lee Lewis for review. Dr. Lewis, who is Board Certified in physical medicine, rehabilitation, and pain medicine, reviewed Plaintiff's medical records, job description, and claim log. Dr. Lewis also contacted Drs. Bouier, Tobia, Teklehaimanot, and Soo twice on December 28 and 29, 2011 but was unable to reach them.  Dr. Lewis left messages including his call back number for each of the physicians but did not receive return calls.  Following his review, Dr. Lewis concluded that Plaintiff was not disabled from her regular unrestricted job as of July 23, 2010. Specifically, Dr. Lewis noted as follows:

> Medical documentation identifies the patient has sustained a slip and fall injury and is reporting cervical and lumbar pain. Physical examination is primarily focused on cervical spine. Imaging studies

demonstrate degenerative changes without high-grade central
foraminal stenosis. Physical examination does not demonstrate clinical
weakness that would be expected to compromise performance of job duties. Range
of motion is noted to be in functional  ranges. From a physical medicine and
rehabilitation perspective, the objective findings do not support the presence of a
musculoskeletal condition that would prevent the claimant's ability to perform her
regular occupation or support [that] performance of her regular occupation would
place the claimant at increased risk of harm or injury. As such, from a physical
medicine and rehabilitation perspective, the patient is not disabled from her regular
unrestricted job as of 07/23/10."

On January 8, 2011, Sedgwick notified Plaintiff that based upon its medical

file review and the independent physician review completed by Dr. Lewis,

Sedgwick had determined that Plaintiff was not eligible for continuing STD

benefits under the STD Plan as of July 23, 2010 and upheld the denial of benefits

on appeal.

Sedgwick sent Plaintiff a letter which provided:  "although some findings are

referenced, none are documented to be so severe as to prevent Ms. Rucker from

performing her job duties as a Laboratory Assistant from July 23, 2010 through her

return to work date."  Sedgwick also informed Plaintiff of her right to bring a civil

action under Section 502(a) of ERISA.

Plaintiff filed this lawsuit on September 22, 2011, alleging a single claim for

additional disability benefits under Section 502(a) of ERISA.

## **Standard of Review**

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme

Court established the standard of review applicable to ERISA benefit claims. In *Firestone*, the Court determined that such claims are to be reviewed *de novo* unless the plan gives the "administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms" of the plan. *Id*. at 115. If the plan grants the administrator or fiduciary such discretionary authority, the Court must determine whether the administrator abused its discretion in reaching its decision. See *id*.; see also *Hackett v. Standard Ins. Co.*, 559 F .3d 825, 829–30 (8th Cir.2009).

In reviewing for abuse of discretion, the Court must affirm the plan administrator's action under the plan unless it is arbitrary and capricious. *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir.2010).  To determine whether a plan administrator's decision was arbitrary and capricious, the Court examines whether the decision was reasonable.  *Id*.  Any reasonable decision will stand, even if the Court would have determined the matter differently as an original matter.  *Id*.

The Court will review the plan administrator's decision to terminate and/or deny plan benefits for abuse of discretion

## <u>Discussion</u>

In reviewing for an abuse of discretion, the plan administrator's decision should be reversed only if it is arbitrary and capricious.  *Green v. Union Sec. Ins.*

*Co.*, 646 F.3d 1042, 1050 (8th Cir.2011); *Midgett*, 561 F.3d at 896.  To determine

whether a plan administrator's decision was arbitrary and capricious, the Court

must look to whether the decision to deny benefits was supported by substantial

evidence, "meaning more than a scintilla but less than a preponderance." *Midgett*,

561 F.3d 897 (internal quotation marks and citation omitted). The Court should not

disturb the decision if it is supported by a reasonable explanation, even though a

different reasonable interpretation could have been made.  *Id*.  "[A] decision is

reasonable if a reasonable person *could* have reached a similar decision, given the

evidence before him, not that a reasonable person *would* have reached that

decision."  *Id*.  (internal quotation marks and citations omitted) (emphasis in

original).  For the following reasons, Defendant's decisions here were reasonable

and supported by substantial evidence.

During initial review, Sedgwick had before it medical evidence from which

it found that Plaintiff was entitled to STD until the time when no further medical

documentation was forthcoming.  Plaintiff's own treating physician originally

determined that Plaintiff was able to return to work, (albeit his date was beyond his

last visit, and the date which Plaintiff was last disabled).  Plaintiff had the

opportunity to provide further medical records which would support her further

disability.  Plaintiff was unable to produce additional documentation.

Notwithstanding that Dr. Bouier determined Plaintiff was no longer disabled, he

did a complete turn around with no further clinical data to support his later conclusion that Plaintiff was indeed disabled.  Such conclusory opinion not only detracts from the treating physician's later opinion, but entitles it to no greater deference than would ordinarily be given to a treating physician.  Based on the conflicting information provided by Dr. Bouier, it was not unreasonable for Sedgwick to rely on the records before it and lack of further evidence of continued disability.

Plaintiff's argument that the reviewing physician did not examine her does not require reversal of the decision.  Dr. Lewis and Nurse Vargo reviewed the entire medical record, as well as Plaintiff's physician's recommendation.  Dr. Bouier's finding of disability was not documented subsequent to his determination that Plaintiff was able to return to work.  The reviewer's determination accurately represent Plaintiff's medical record and adequately address the evidence supporting her claim for disability.   The reviewer's findings did not demonstrate that Plaintiff was unable to perform her job duties.

Likewise, Plaintiff's claim that the physician reviewers' opinions were given more weight than her treating physician does not require a finding of abuse. The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA:

Plan administrators may not arbitrarily refuse to credit a claimant's

reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

In *Weidner v. Fed. Express Corp*., 492 F.3d 925, 930 (8th Cir. 2007), the Eighth Circuit applied *Nord* to hold that a plan administrator did not abuse its discretion in denying a claimant total disability benefits despite a treating physician's opinion that the claimant was "fully disabled."  The Court emphasized that consultative specialists had concluded that the medical evidence did not reflect total disability and that the claimant's annual MRI scans indicated that her condition had "progressed very little during the relevant period."  *Id*.  Furthermore, in *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 899 (8th Cir.2006), the Court rejected the contention that the plan administrator abused its discretion when it "credited [a reviewer's] analysis over [a primary care physician's] conclusions because [the reviewer] did not physically examine [the claimant]."  The Court  noted that "[w]e have held ... that a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial."  *Id*. at 899-900 (citing *Johnson v. Metro.*

*Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir.2006); *Coker v. Metro. Life Ins. Co.*, 281

F.3d 793, 799 (8th Cir.2002)).  See also, *Midgett*, 561 F.3d at 897.

In light of the conflicting medical opinions from Dr. Bouier and the reviews

by Dr. Lewis and Nurse Vargo, Defendant's continued denial of Plaintiff's

disability claim was not arbitrary and capricious. *Midgett*, 561 F.3d at 898; see also

*Coker*, 281 F.3d at 799 (denial of benefits not unreasonable where subjective

medical opinions were not supported by objective medical evidence, and objective

medical evidence showed no disabling medical condition).  Indeed, in view of Dr.

Lewis' comprehensive review of all of the evidence submitted, a reasonable person

could have reached a similar decision.  *Midgett*, 561 F.3d at 897. Defendant

therefore did not abuse its discretion in its decision to affirm the termination of

Plaintiff's short term disability benefits. *Id*. at 898.

Plaintiff also claims that Defendant abused its discretion by picking and

choosing what evidence upon which to rely in making its adverse determination.

Plaintiff avers that such selective reference is evidenced by Defendant's failure to

acknowledge Plaintiff's specific job description.  The evidence and information

reviewed by Defendant in making its final decision included the type of job

Plaintiff had and her daily activities in that job.  In its final determination on

appellate review, however, Defendant  was not required to discuss the specific

evidence submitted by Plaintiff.  *Midgett*, 561 F.3d at 896 (citing 29 C.F.R. §

2560.503–1(j)).  As such, the failure of Defendant  to discuss the specific details of

Plaintiff's written description of what is required to be an employee at St. John

Health does not detract from the reasonableness of Defendant's determination to

deny Plaintiff disability benefits.

Finally, because plaintiff's disability status terminated effective July 22,

2010, Plaintiff did not meet the 181–day elimination period of continuous disability

in order to become eligible for long term disability benefits.  The decision to deny

Plaintiff long term disability benefits on account of her inability to meet the Plan's

required elimination period was reasonable.  *Butts v. Continental Cas. Co.*, 357

F.3d 835, 839 (8th Cir.2004).

## Conclusion

For all of the foregoing reasons, there was substantial evidence to support

Defendant's decision to terminate Plaintiff's short term disability benefits effective

July 22, 2010, and to deny Plaintiff's request for long term disability benefits.  As

such, Defendant did not abuse its discretion in its determinations.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment (Doc. No. 28) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary

Judgment (Doc. No. 31) is **denied**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 27th day of September, 2013.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE